IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNNY WILLIAMS,<br><br>    Petitioner,<br><br>    v.<br><br>CHARLES HINSLEY,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 04 C 5019

Judge Mark Filip

## MEMORANDUM OPINION AND ORDER DISMISSING
## PETITION FOR WRIT OF HABEAS CORPUS

Johnny Williams ("Williams" or "Petitioner"), has filed a petition for a writ of habeas

corpus ("Petition") against Charles Hinsley, the warden of Menard Correctional Center in

Menard, Illinois. Petitioner challenges the constitutionality of the state court conviction and

judgment under which he is incarcerated. For the reasons explained below, Williams's Petition

for a writ of habeas corpus is respectfully denied.

### BACKGROUND

Petitioner is in custody of the Illinois Department of Corrections following his 1999

conviction in a bench trial in the Circuit Court of Cook County, Illinois, for first-degree murder

and two counts of attempted first-degree murder. (D.E. 11, Ex. A at 1.)[1] Petitioner was

sentenced to 45 years imprisonment for the murder, and two consecutive 10-year sentences for

each count of attempted murder. (*Id.*)

---

[1]    The facts are taken from the Illinois appellate court's resolution of Petitioner's direct
appeal. *See, e.g., Ashford v. Gilmore*, 167 F.3d 1130, 1131 (7th Cir. 1999) (citing 28 U.S.C. §
2254(e)(1)). Docket entries are designated as "D.E. ___," followed by the appropriate district
court docket number.

On June 16, 1996, William Dennis ("Dennis") drove with two men, Jerry Johnson ("Johnson") and Darren Brown ("Brown"), to an apartment complex to pick up Brown's cousin, Kimberly Skipwith, to celebrate her birthday. (*Id.* at 3.) Dennis was a member of the "Gangster Disciples" street gang at the time. (*Id.* at 5.) Unbeknownst to Dennis, Petitioner, a high-ranking member of the rival "Black Disciples" street gang, was at the apartment complex. (*Id.*)

When Dennis, Johnson, and Brown arrived at the apartment complex, four or five men, including Williams, John Little ("Little"), and Atravius Thomas ("Thomas"), approached them and asked the men "what y'all is"—*i.e.*, what was the gang membership of Dennis, Johnson, and Brown. (*Id.* at 3, 5.) Brown responded that they were Gangster Disciples. (*Id.* at 3.) Violence quickly ensued: Brown was struck in the face with a gun and Williams, Little, and Thomas all fired shots. (*Id.*) Dennis was fatally wounded and Brown and Johnson were shot in the arm and leg, respectively. (*Id.* at 3-4.)

Williams, Thomas, and Little were all charged in connection with the shootings. (*Id.* at 1.) Williams opted for a bench trial, Thomas exercised his constitutional right to a jury trial, and Little pleaded guilty in exchange for a 28-year prison term. (*Id.*) On September 5, 1997, as part of the plea-bargaining process, Little provided Assistant State's Attorney Michael O'Malley ("ASA O'Malley") with a written statement concerning the shootings (also "Little's Written Statement"). (*Id.* at 5.) Detective Smith of the Chicago Police Department ("Detective Smith") was also present during the preparation of Little's Written Statement. (*Id.* at 8.) In his written statement, Little related that there was an ongoing gang war between the Black Disciples and the Gangster Disciples at the time of the shootings. (*Id.* at 5.) In it, Little also indicated that Williams approached the car and shot at Dennis after Brown responded that he was a Gangster

2

Disciple, that Little shot twice at Brown and Johnson as they attempted to flee, and that Thomas fired in Dennis's direction three times. (*Id.*) Little signed each page of the statement. (*Id.* at 6.)

Williams and Thomas were tried concurrently in severed proceedings. (*Id.* at 1.) Before trial, the State indicated that it might call Little as a witness (*id.* at 2); Little's attorney maintained that Little would assert his Fifth Amendment right against self-incrimination. (*Id.*) The court determined that Little's decision not to testify was not protected by the Fifth Amendment because he had already pleaded guilty and been sentenced. (*Id.*) The trial court then held an evidentiary hearing to ascertain whether Little's Written Statement was admissible under 725 ILCS 5/115-10.2 ("Illinois Section 10.2 "). (*Id.*) The trial court expressed its opinion that Little's Written Statement was admissible, but reserved ruling until trial. (*Id.* at 3.)

A witness named Gary Dixon ("Dixon") testified to an Illinois grand jury that he witnessed the crime and saw Williams "[shoot] the 'old man' three times." (*Id.* at 4.) At trial, Dixon essentially recanted his grand jury testimony. (*Id.*)

At trial, the State also called Little to testify. (*Id.*) On direct examination, Little admitted to pleading guilty to the murder of Dennis, but initially refused to answer the State's questions regarding his written statement. (*Id.*) Little argued that his refusal was protected by the Fifth Amendment because answering the State's questions would hurt his "appeal and his post-conviction rights." (*Id.*) The trial court disagreed with Little's position on the circumstances presented,[2] and ordered Little to answer the State's questions. (*Id.*) Little then admitted that he

---

[2] The trial court stated: "'I do not believe that this speculation[] of things that might happen would be grounds to allow him to assert his Fifth Amendment claim. He doesn't face jeopardy now. He's already pled guilty and been sentenced on this case. There's no more jeopardy that can be attached to him. I don't see that there's going to be a situation where he is going to ever have to stand trial. And we're just guessing about things in the future. If he does testify in this

3

had signed all but the first page of his statement, but claimed that he could not remember giving ASA O'Malley the information contained in his written statement. (*Id.*)

In connection with Little's testimony, the trial court determined that Little's trial testimony was inconsistent with his prior written statement. (*Id.* at 5.) Thus, the trial court held, Little's Written Statement was admissible under 725 ILCS 5/15-10.1 ("Illinois Section 10.1"), which, under certain circumstances, "allows a prior inconsistent statement that would otherwise be excluded as hearsay to be admitted as substantive evidence." *People v. Thomas*, 821 N.E.2d 628, 631 (Ill. App. Ct. 2004). The trial court did not admit the statement under Illinois Section 10.2, irrespective of whether it was admissible on that basis as well. (*Id.* at 5.) The trial court also permitted ASA O'Malley and Detective Smith to testify to the circumstances surrounding the preparation of Little's Written Statement and the statement itself. (*Id.* at 7-8.)

On cross-examination, Little answered every question co-defendant Thomas's attorney asked (*id.*); Williams's counsel adopted Thomas's cross and declined the opportunity to cross-examine Little further. (*Id.* at 5.) Williams's counsel also cross-examined ASA O'Malley and Detective Smith.

After deliberation, the trial court/factfinder found Williams guilty on all counts. The trial court sentenced Williams to consecutive prison terms of 45 years for first-degree murder conviction and 10 years for each count of attempted first-degree murder, for a total sentence of 65 years. (*Id.* at 1.)

---

case and somehow or another there's a remote possibility of standing trial does take place, there are other remedies that may be available to him that would not necessitate his having a Fifth Amendment claim.'" D.E. 11, Ex. A at 2 (Illinois Court of Appeals affirming conviction, quoting trial court).

On direct appeal, Williams raised two claims: (1) the trial court erred in preventing Little from exercising his Fifth Amendment right to be free from self-incrimination and (2) the trial court violated Williams's Sixth Amendment right to be confronted with the witnesses against him ("Confrontation Clause") when it admitted Little's Written Statement under Illinois Section 10.2.[3] (*Id.* at 6.) The appellate court affirmed Williams's conviction. With respect to his first claim, the appellate court held that Williams lacked standing to assert Little's Fifth Amendment rights. (*Id.*) With respect to his second claim, the appellate court determined that Little's written statement was admitted under Illinois Section 10.1 and not Illinois Section 10.2; the appellate court further held that there was no Confrontation Clause violation because Williams had a fulsome opportunity to cross-examine Little himself, as well as ASA O'Malley and Detective Smith, at trial. (*Id.* at 6-8.)

Williams then filed a *pro se* petition for leave to appeal in the Illinois Supreme Court, advancing two claims that were substantially similar, at least in part, to the two raised on direct appeal. (*See, e.g., id.*, Ex. B at 2 ("The Appellate Court erred where the defendant was denied his Sixth Amendment right of confrontation when the Court incorrectly granted the State's 115-10.2 motion."); *id.* Ex. B at 15-16 (same).) The Illinois Supreme Court denied the petition. (*Id.*, Ex. C.)

On May 15, 2002, Williams filed a *pro se* post-conviction petition that advanced the following claims: (1) the trial court's admission of Little's written statement violated the *ex post facto* clauses of the Illinois and United States Constitutions; (2) Williams's Confrontation Clause

---

[3]     Williams argued that the statement was admitted pursuant to Illinois Section 10.2; as is discussed below, the statement was actually admitted under Illinois Section 10.1.

rights were violated through the admission of Dixon's grand jury testimony when he testified inconsistently at trial; (3) Williams's trial counsel was ineffective for failing to preserve his *ex post facto* and Confrontation Clause claims; and (4) appellate counsel was ineffective for failing to raise the aforementioned claims on direct appeal. (*Id.*, Ex. D at 3.)

The trial court summarily denied the petition as frivolous and meritless (*id.*, Ex. E) and the appellate court affirmed the denial, noting that the record showed that Little's Written Statement was admitted under Illinois Section 10.1 (not Illinois Section 10.2, as Williams contended) and that Williams had ample opportunity to cross-examine Little at trial. (*Id.*, Ex. F at 2.) The appellate court did not expressly address the other arguments in the petition. (*See id.*)

Williams subsequently filed a petition for leave to appeal to the Illinois Supreme Court that argued that the trial court erred as a matter of Illinois procedural law in summarily dismissing his petition for post-conviction relief on the merits without proceeding through more elaborate procedures otherwise called for under Illinois law. (*Id.*, Ex. G at 3.) Williams's petition only identified one further substantive claim—that the trial court's admission of Little's written statement violated the *ex post facto* clause of the United States and Illinois Constitutions because Illinois Section 10.2 had not been enacted at the time Williams committed the murders and attempted murders. (*Id.*, Ex. G at 3.) The Supreme Court of Illinois denied the petition on January 28, 2004. (*Id.*, Ex. H.)

On August 2, 2004, Petitioner filed the instant petition for a writ of habeas corpus in the District Court for the Northern District of Illinois. (D.E. 1.)

I.     Standard of Review

The grounds upon which a federal district court may issue a writ of habeas corpus for a

person imprisoned pursuant to a state court criminal judgment are subject to meaningful limits.[4] First, habeas relief can be granted "only on the ground that [a prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court cannot grant habeas relief on the grounds that a state court incorrectly applied state law, except to the extent that such application also violated federal law. *See Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) ("Federal habeas relief is only available to a person in custody in violation of the United States Constitution or laws or treaties of the United States, *see* 28 U.S.C. § 2254(a), and is unavailable to remedy errors of state law.").

Second, the Court may not provide habeas relief unless Petitioner has exhausted his available remedies in state courts. *See* 28 U.S.C. § 2254(b)(1)(A). Exhausting all state remedies includes presenting each claim on appeal to the Illinois appellate court and in a petition to the Illinois Supreme Court for discretionary review. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003) (holding that the rule applies for purposes of habeas corpus under Section 2254). This rule applies to claims presented in petitions for state post-conviction relief, as well as to claims contained in direct appeals from criminal courts. *See, e.g., White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (per curiam).

Third, habeas relief is ordinarily not available for claims that have been "procedurally defaulted" in state proceedings. This means that the Court may not review a claim if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S.

---

[4]     Petitioner makes a number of inaccurate descriptions of the law in the "Standard of Review" section of his habeas petition; the proper standard of review is set forth in this section.

722, 735 n.1 (1991); *accord, e.g., Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992) ("Procedural default . . . occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court."). The district court may excuse procedural default when there is cause for the default and prejudice as a result of the alleged violation of federal law or where a refusal to consider the claim would result in a fundamental miscarriage of justice. *See Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002). To show cause for a default, Petitioner must offer an excuse that cannot fairly be attributed to him. For example, conduct by a petitioner's counsel that is constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), constitutes cause. However, a claim that, for example, ineffective assistance was sufficient cause for a procedural default can *itself* be procedurally defaulted if it is not properly presented to state courts in a full round of review. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Dellinger*, 301 F.3d at 766-67.

In order to establish that a fundamental miscarriage of justice has occurred, Petitioner must demonstrate by clear and convincing evidence that, but for the alleged violation of federal law in the state court proceedings, no reasonable juror would have convicted him. *Dellinger*, 301 F.3d at 767 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In other words, the exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Id.* Due to the prior finding of guilt by the factfinder, a petitioner alleging a fundamental miscarriage of justice bears the burden of proof. *See Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003).

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996),

placed additional restrictions on federal habeas relief for persons imprisoned pursuant to the judgment of a state court. Prior to AEDPA's enactment, "federal courts disregarded the state court's legal conclusions and reached independent judgments on the issues presented to them, but deferred to the state court's findings of fact." *Agnew v. Leibach*, 250 F.3d 1123, 1128-29 (7th Cir. 2001). Under AEDPA, the state court judgment must violate federal law and it must either be "contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or be "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.§ 2254(d).

A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided a case with "materially indistinguishable facts" differently from the Court. *Huynh v. Bowen*, 374 F.3d 546, 548 (7th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). The state court need not even be aware of the applicable Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 7-8 (2002) (per curiam).

A state court decision is an "unreasonable application of" clearly established law "'if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Cossel v. Miller*, 229 F.3d 649, 654 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 413). As the Seventh Circuit has repeatedly instructed, the unreasonable application prong of Section 2254(d)(1) is "a difficult standard to meet." *Floyd v. Hanks*, 364 F.3d 847, 850 (7th Cir. 2003) (citation omitted); *Jackson*

*v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (citation omitted); *see also Hardaway v. Young*, 302

F.3d 757, 762 (7th Cir. 2002) (holding that "unreasonable," for the purpose of Section

2254(d)(1), means "something like lying well outside the boundaries of permissible differences

of opinion").

In this regard, the Supreme Court has repeatedly instructed that an unreasonable

application of federal law is something more than simply an application that the habeas court

might not itself have reached in the first instance or that the habeas court thinks is incorrect.

Thus, for example, in *Woodford v. Viscotti*, 537 U.S. 19, 24-25 (2002), the Supreme Court

explained the role a federal habeas court is to play:

> Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue
> the writ simply because that court concludes in its independent judgment that the state-
> court decision applied *Strickland* incorrectly. Rather, it is the habeas applicant's burden
> to show that the state court applied *Strickland* to the facts of his case in an objectively
> unreasonable manner. An *unreasonable* application of federal law is different from an
> *incorrect* application of federal law. The Ninth Circuit did not observe this distinction,
> but ultimately substituted its own judgment for that of the state court, in contravention of
> 28 U.S.C. § 2254(d).

(internal citations and quotation marks omitted; emphases in *Woodford*); *accord, e.g., Williams*,

529 U.S. at 410 ("[A] federal habeas court may not issue the writ simply because the court

concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable."). In summary, the reviewing court is not permitted to substitute its independent

judgment as to the correct outcome; it must only ask if the state-court decision was reasonable.

*See Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000); *Huynh*, 374 F.3d at 548 ("An

unreasonable application is not simply what we might deem to be an incorrect or erroneous

application of federal law.").

Section 2254(e)(1) requires a federal court, in a habeas proceeding, to presume that a determination of a factual issue made by a state court is correct. "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *accord, e.g., Ruvalcaba v. Chandler*, 416 F.3d 555, 559-60 (7th Cir. 2005) (citing *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000)).

II.   Discussion

Williams seeks habeas relief on the grounds that (1) his *ex post facto* rights under the United States Constitution and the Illinois Constitution were violated because the trial court admitted Little's Written Statement pursuant to Illinois Section 10.2, which had not been enacted at the time of the homicide offenses in question; (2) Petitioner's right to confrontation was denied by the admission of Dixon's grand jury testimony and Little's Written Statement; (3) trial counsel was ineffective under *Strickland* for failing to preserve Petitioner's *ex post facto* and Confrontation Clause claims for appeal; and (4) appellate counsel was ineffective under *Strickland* for failing to raise these aforementioned issues on appeal. (*See* D.E. 1 at 4, 15.) The ineffective assistance of counsel claims are derivative of the *ex post facto* and the Confrontation Clause claims; if the latter claims are meritless, then Petitioner did not receive ineffective assistance of counsel. *See, e.g., Howard v. Gramley*, 225 F.3d 784, 790-91 (7th Cir. 2000).

A.   Ex Post Facto Claim

Petitioner's first claim is that Little's prior statement was admitted under Illinois Section 10.2 in violation of the state and federal constitutional prohibitions against *ex post facto* laws. Illinois Section 10.2 is Illinois's "residual hearsay" exception, which applies when a witness

11

refuses to testify despite a court order to testify. Illinois Section 10.2 was added to the Illinois

Code of Criminal Procedure by P.A. 89-689, which had an effective date of December 31, 1996.

Petitioner argues that because the homicide offenses of conviction were committed on June 16,

1996, the prohibition on *ex post facto* laws precludes the admission of testimony pursuant to the

subsequently-enacted statute. (D.E. 1 at 5.)[5] This claim was raised in Williams's post-

conviction petition (*id.*), in his appeal to the appellate court (*id.*, Ex. F at 1-2), and in his petition

for leave to appeal to the Illinois Supreme Court. (*Id.*, Ex. G at 3). As a result, this issue is

properly before this Court.

     The appellate court, upon reviewing the record, made a number of factual findings that

defeat Williams's *ex post facto* claim; Williams has not rebutted the presumption that these facts

are correct, which is his burden under § 2254(e)(1). *See Ruvalcaba*, 416 F.3d at 559-560. The

appellate court determined that the trial court held a pre-trial hearing to determine if Little's

Written Statement was admissible under Illinois Section 10.2; at that time, Little maintained that

he would not testify at trial, so Illinois Section 10.2 appeared to be germane. (D.E. 11, Ex. A at

2.) While the trial court considered the statement under Illinois Section 10.2, and expressed that

the statement likely would prove to be admissible on that basis, the trial court explicitly reserved

its ruling on the admissibility of Little's written statement until trial. (*Id.* at 3.) When the State

---

[5]    Rules of evidence sometimes evolve a common law fashion, with developments later reflected in statutory or evidentiary code enactments or reform packages. The parties do not discuss whether Illinois Section 10.2 reflected common law developments that occurred before the statutory enactment, and it is not necessary to explore this question further, given that the evidence at issue was, as a matter of fact repeatedly found by the Illinois courts, admitted under Illinois Section 10.1 and not Illinois Section 10.2. As explained further below, this factual finding is consistent with the clear record of the trial court proceedings, and it certainly has not been shown to be incorrect (or even questionable) by clear and convincing evidence, as would be required. *See, e.g.*, 28 U.S.C. § 2254(e).

ultimately called Little as a witness, Little reluctantly agreed to testify. (*Id.* at 4.) In connection

with Little's testimony at trial—at which Little was cross-examined by Thomas's attorney, which

cross-examination was adopted by Williams's attorney, who declined the opportunity to cross-

examine Little further (*id.* at 4-5.)—the trial court determined that Little's testimony was

inconsistent with his prior written statement, and determined that the written statement was

admissible under Illinois Section 10.1. (*See id.* at 5.) The Illinois Court of Appeals repeatedly

and clearly found that the evidence was admitted under Illinois Section 10.1. (*See, id.*, Ex. A at 6

(Illinois Court of Appeals finding that the trial "record clearly shows that the [trial] court

admitted the statement under section 115-10.1 "); *id.*, Ex. I at 2 ("We found there . . . [in the

direct appeal] and observe here that the trial transcript shows the trial court admitted Little's

statement under section 115-10.1 of the Code of Criminal Procedure (the Code), which provides

for the substantive admissibility of a witness' earlier inconsistent statement under certain

conditions.").) Indeed, Williams acknowledged in his first petition for leave to appeal to the

Illinois Supreme Court that Little's statement had been admitted under Illinois Section 10.1. (*See

id.*, Ex. B at 14 (stating, in relating the history of the trial, that "[t]he court rules the handwritten

statement is now admissible pursuant to 725 ILCS 115-10.1 instead of 115-10.2 . . . .").) The

Court has independently reviewed the trial transcript, and it confirms what everyone has

previously found—that the statement was admitted under Illinois Section 10.2. *Accord* D.E. 11,

Ex. I (trial transcript), at 287 (trial court stating, "it's pursuant to Section 115-10.1. We're not

going to be using 115-10.2 . . . ."). As a result, the factual lynchpin underlying Williams's *ex*

*post facto* claim is incorrect, and the Court respectfully rejects the claim.[6]

Moreover, and independently, even if the trial court had stated that it was admitting the evidence under Illinois Section 10.1 as opposed to Illinois Section 10.2 (which was not the case), the error would be harmless. A federal habeas court should not upend a state court conviction when a proven error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993); *see also id.* at 637 (holding that federal habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice'") (quoting *United States v. Lane,* 474 U.S. 438, 449 (1986)). As the Illinois appellate court held, the evidence in question was properly admissible under Illinois Section 10.1. (*See* D.E. 11, Ex. A at 8.) Thus, even if the trial court had misspoke or admitted the evidence under Illinois Section 10.2, the evidence was admissible (indeed, was admitted) under Illinois Section 10.1, and Petitioner does not even question that conclusion of the Illinois Court of Appeals concerning Illinois Section 10.1.

---

[6]     Petitioner does not argue that Illinois Section 10.2 is unconstitutional, an assertion which would be inconsistent with extensive Illinois precedent analyzing the issue under federal Confrontation Clause jurisprudence. *See, e.g., People v. Thomas,* 687 N.E.2d 892, 903 (Ill. 1997) ("The use of Rhonda's statement as substantive evidence at defendant's trial did not deny defendant his constitutional right to confront witnesses. First, Rhonda took the stand and testified that she made the prior out-of-court statement to the police. Where a hearsay declarant testifies at trial, the right to confrontation is satisfied.") (citing *California v. Green,* 399 U.S. 149, 158 (1970)); *see also Green,* 399 U.S. at 155 (1970) (explaining that the question of whether a prior inconsistent statement is hearsay, on the one hand, and whether it can be considered as substantive evidence under the Confrontation Clause where the declarant testifies at trial and is available for cross-examination, on the other hand, are different questions; and further explaining that various states, respected jurists, and commentators have adopted the view that the statements should be considered for their potential substantive value where the witness is available for cross-examination at trial) (citing various state laws, model evidence codes, Second Circuit opinions of Henry Friendly and Learned Hand, and academic treatises supporting substantive admissibility).

B.    Confrontation Clause Claim

Petitioner's second claim is that the trial court's admission of Dixon's grand jury testimony and Little's Written Statement violated his rights under the Confrontation Clause. (D.E. 1 at 4, 15.) Williams's claim as to Dixon's grand jury testimony was first raised in his post-conviction petition (D.E. 11, Ex. D at 2), but it was abandoned on appeal (*see id.*, Ex. F) and in his petition for leave to appeal to the Illinois Supreme Court. (*See id.*, Ex. G.) Since Illinois law would bar Petitioner from raising this federal constitutional claim in a new state proceeding—*see, e.g., Lemons v. O'Sullivan*, 54 F.3d 357 (7th Cir. 1995) (collecting authorities and holding that issues that could have been but were not raised on direct appeal or post-conviction review are typically forfeited)—it is procedurally defaulted. *See, e.g., Coleman*, 501 U.S. at 735 n.1. Williams neither alleged nor demonstrated cause for the default and resulting prejudice because he procedurally defaulted his ineffective assistance of counsel claims. *See* Part II.C, *infra*. Williams is also not alleging actual innocence, so the Court's refusal to consider the claim would not constitute a "fundamental miscarriage of justice."

Williams also perhaps raises a related claim regarding Little's statement. This claim was raised on direct appeal to the Illinois Appellate Court (D.E. 11, Ex. A at 6), and Williams presented the same claim in his petition for leave to appeal, at least likely in close enough form to suffice for present purposes. (*Id.*, Ex. B at 15-20.) Thus, this Court will assume that claim is properly before the Court.

As explained further below, both claims—i.e., the waived Dixon grand jury claim, and the Little Written Statement claim—are substantively meritless. Because the general operative law for both claims is similar, however, the Court will first address those principles.

15

At the time Williams was tried and convicted, the governing Confrontation Clause

precedent was *Ohio v. Roberts*, 448 U.S. 56 (1980).[7] Under *Roberts*, the Confrontation Clause

barred the use of hearsay statements if the declarant did not testify at trial unless the declarant

was unavailable and the statement bore adequate "indicia of reliability." *Id.* at 66. *Roberts*

further held that reliability could be inferred if the hearsay evidence falls within a "firmly rooted

hearsay exception" or the statement was accompanied by "particularized guarantees of

trustworthiness." *Id.* The *Roberts* inquiry into reliability was only necessary if the declarant did

not testify at trial—well prior to *Roberts*, the Supreme Court had already determined that a

defendant's Confrontation Clause rights are not violated by admitting a witness's out-of-court

statements, as long as the witness testifies at trial and is subject to cross-examination. *Nelson v.*

*O'Neil*, 402 U.S. 622, 626-27 (1971) (citing *California v. Green*, 399 U.S. 149, 158 (1970)); *see*

*also Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (discarding *Roberts* reliability analysis

but reaffirming long-standing principle that Confrontation Clause does not bar admission of a

prior out-of-court statement so long as the declarant is present at trial to defend or explain it)

(citing *Green*, 399 U.S. at 162).

As the Supreme Court has explained, the right of confrontation "means more than being

allowed to confront the witness physically. Indeed, the main and essential purpose of

confrontation is to secure for the opponent the opportunity of cross-examination." *Delaware v.*

---

[7]     The *Roberts* approach (but not its result) was ultimately discarded in *Crawford v.*
*Washington*, 541 U.S. 36, 59 (2004), but *Crawford* is not retroactive for purposes of collateral
review and thus is of no help to Williams in this habeas corpus proceeding. *See Murillo v.*
*Frank*, 402 F.3d 786, 791 (7th Cir. 2005). In addition, as explained further below, the Little
evidence would be admissible under *Crawford* in any event. *See Crawford*, 541 U.S. at 59 n.9
(citing *California v. Green*, 399 U.S. 149, 162 (1970)).

*Van Arsdall*, 475 U.S. 673, 678 (1986) (internal quotation marks and citations omitted); *accord*, *e.g.*, *United States v. Sasson*, 62 F.3d 874, 882 (7th Cir. 1995). The Supreme Court also has explained, when reiterating that the main and essential purpose of confrontation is to secure an opportunity for cross-examination, that, "[g]enerally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). As long as cross-examination provides the factfinder with sufficient information to assess a witness's credibility, the Confrontation Clause is not violated. *See*, *e.g.*, *id.*, 474 U.S. at 20-21; *Sasson*, 62 F.3d 874, 883 (7th Cir. 1995) (collecting cases).

If the trial court does err by violating the defendant's right to confrontation, the "harmless error" doctrine applies. *See Van Arsdall*, 475 U.S. at 684. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

          1.     Dixon's Grand Jury Testimony

Dixon's grand jury testimony was presented to the factfinder when Dixon essentially contradicted and recanted that testimony in its entirety at trial. (D.E. 11, Ex. A at 4.) Consideration of a witness's prior grand jury testimony is unexceptional under such circumstances. *See*, *e.g.*, Fed. R. Evid. 801(d)(1); Pattern Criminal Federal Jury Instructions for the Seventh Circuit, No. 3.09 (2005). Dixon was a witness at trial and was cross-examined by the defense (D.E. 11, Ex. B at 6-7); this forecloses a Confrontation Clause claim unless Williams can demonstrate that the cross-examination was constitutionally insufficient. Here, as explained

17

by the Illinois Court of Appeals, Dixon essentially recanted his damaging testimony at trial. (Id., Ex. A at 4.) Precedent already has rejected much stronger defense claims concerning witnesses who actually had or who claimed to have no memory of underlying events, and did not, as here, disclaim prior damaging testimony. *See, e.g., United States v. Owens*, 484 U.S. 554, 557-58 (1988) (holding that the defendant's confrontation rights were not violated by the introduction, pursuant to Fed. R. Evid. 801(d)(1), of the victim's out-of-court identification of the defendant as his assailant, even though the victim had no memory of seeing the assailant); *see also Fensterer*, 474 U.S. at 21-22 ("The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion."). The Seventh Circuit's teaching in *United States v. Keeter*, 130 F.3d 297 (7th Cir. 1997), is also instructive; in that case, there was no Confrontation Clause violation when the government introduced the grand jury and affidavit testimony of one of its witnesses as a prior inconsistent statement after the witness feigned amnesia on the stand during direct examination. *Id.*, 130 F.3d at 302; *see also Owens*, 484 U.S. at 842 (endorsing Justice Harlan's concurrence in *California v. Green*, 399 U.S. 149 (1970), where he wrote that a witness's inability to "recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence") (quoting *Green*, 399 U.S. at 188 (Harlan, J., concurring)). Thus, Williams's (waived) claim concerning Dixon's grand jury testimony fails substantively.

Moreover, and independently, even if it was error to admit Dixon's testimony, the error was appear to be harmless under *Van Arsdall*. There is no evidence that Dixon's testimony was crucial to the State's case. Indeed, the trial court found Little's written statement to be more

18

inclusive and more probative than Dixon's testimony (*see* D.E. 11, Ex. A at 3), indicating that Dixon's testimony was cumulative. Under such circumstances, even if the claim concerning Dixon's grand jury statement were not waived (which it was) and meritless (which it is), it would not appear to afford a basis to disturb the state court judgment.

        2.     Little's Written Statement

Illinois Section 10.1 permits the use of a witness's prior statements as substantive evidence when the statement is inconsistent with the witness's testimony at trial, the witness is subject to cross-examination concerning the statement, the statement narrates, describes, or explains an event or condition of which the witness had personal knowledge, and the statement is proved to have been written or signed by the witness. The trial court admitted Little's written statement pursuant to this provision, further finding that Little's written statement bore substantial indicia of reliability so as to qualify for admission; the Illinois Court of Appeals affirmed. (D.E. 11, Ex. A at 6.)

In the Petition, Williams argues that "the addmittance [sic] of witness Little's statement at petitioner's trial under the grounds in Ohio v. Roberts, 488 U.S. 56 (1980) was error and in opposition to the recent decision held by the United States Supreme Court in Crawford v. Washington, 124 S. Ct. 1354 . . . . Thus, the trial Court's determination should be Reversed and remanded." (D.E. 1 at 15 (erratic capitalization in original).) This contention is meritless.

First, precedent instructs that the decision in *Crawford* is not retroactive for purposes of collateral review. *See Murillo v. Frank*, 402 F.3d 786, 790-91 (7th Cir. 2005). Petitioner's petition for leave to appeal to the Illinois Supreme Court was denied in his direct appellate challenge in 2002 (D.E. 1 at 2); *Crawford* was not decided until March 2004. *See id.*, 541 U.S.

36. Under those facts, *Crawford* cannot assist Williams with respect to his federal habeas petition, filed in August 2004 (D.E. 1 at 1). *See Murillo*, 402 F.3d at 791.

    *Crawford* is of no assistance to Williams in any event. Under 28 U.S.C. § 2254(d), the Court may not grant habeas relief unless the state court decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court at the time. A state appellate court need not cite to any federal cases or provisions; a state court need not even be aware of the applicable Supreme Court cases or principles as long as the state-court reasoning does not contradict them. *See, e.g., Early*, 537 U.S. at 7-8. The appellate court's decision that no Confrontation Clause violation occurred because Little testified at trial and was available for cross-examination was not contrary to or an unreasonable application of federal law; rather, it was consistent with the Supreme Court's pronouncements at the time. *See, e.g., Nelson*, 402 U.S. at 629-30 (holding that opportunity for cross-examination means that a defendant's Sixth Amendment rights have not been denied); *Green*, 399 U.S. at 162-64. It also is consistent with *Crawford* itself. *See id.*, 541 U.S. at 59 n.9 ("[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.") (citing *Green*, 399 U.S. at 162); *id.*, 541 U.S. at 59 n.9 (The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). Under such circumstances, Petitioner has shown no entitlement to relief concerning the Little statement.

    C.    Ineffective Assistance of Counsel Claims

    Petitioner's final two claims are (i) ineffective assistance of trial counsel for failing to preserve the *ex post facto* and Confrontation Clause claims in a post-trial motion and (ii)

ineffective assistance of appellate counsel for failing to preserve these issues on appeal. These two claims are procedurally defaulted because they were not fairly presented for a full round of review in the state courts. *See Edwards*, 529 U.S. at 451-52; *Dellinger*, 301 F.3d at 766-67. These claims were first raised in Williams's post-conviction petition (D.E. 11, Ex. D at 2), but they were abandoned on appeal of that petition's dismissal (*see id.*, Ex. F) and in the subsequent petition for leave to appeal to the Illinois Supreme Court, which only argued that the trial committed procedural error under Illinois law by summarily dismissing Petitioner's (factually baseless) *ex post facto* claim concerning Illinois Section 10.2 without first appointing counsel. (*See id.*, Ex. G.) Furthermore, Williams has neither alleged nor demonstrated cause and prejudice nor has he demonstrated actual innocence such that failure to consider his *Strickland* claims would be a fundamental miscarriage of justice. Therefore, this claim is procedurally defaulted.

In addition, even without the procedural default, these claims fail on their merits. In *Strickland,* the Supreme Court established the framework under which claims of ineffective assistance of counsel are analyzed:

> First, the defendant must show that counsel's performance was deficient. This requires showing that the counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a . . . trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.*, 466 U.S. at 687.

To satisfy the first prong, Petitioner would need to show that defense "counsel's representation fell below an objective standard of reasonableness." *Gallo-Vasquez v. United*

*States*, 402 F.3d 793, 798 (7th Cir. 2005). When considering the effectiveness of an attorney's performance, a district court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A defendant "must direct [the Court] to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance." *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000) (internal quotation marks and citation omitted). Courts are to "indulge a strong presumption" of competence such that "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). A court should not simply second-guess a defense counsel's assistance after a conviction or adverse sentence has occurred, because the benefit of hindsight is likely to distort the complexity of the challenges presented and the reasonableness of a counsel's decision on a real-time basis. *See id.; accord, e.g., Fountain*, 211 F.3d at 434 ("[M]any trial determinations, like so many other decisions that an attorney must make in the course of representation, are a matter of professional judgment. Thus, we must resist a natural temptation to become a 'Monday morning quarterback.'") (internal punctuation and citations omitted); *Wright v. Walls*, 288 F.3d 937, 946 (7th Cir. 2002).

The standard for evaluating appellate counsel is quite similar: the court must decide whether it was "within the realm of competent appellate representation to decline to raise a particular point on appeal," taking into consideration the arguments available to counsel and the applicable standard of review. *Gramley*, 225 F.3d at 790-91. Courts then consider whether counsel's decisions represented the same kind of strategic choices permitted for trial decisions.

22

*See id.* at 791. The Supreme Court has made clear that a defense counsel is not required to inundate an appellate court with every non-frivolous issue to provide constitutionally competent counsel. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000). Indeed, the Supreme Court has stated that counsel "should not" pursue this strategy (*id.*)—at least normally—because the defense function typically requires judgment and strategy calls in the selection of arguments and issues, so as "to maximize the likelihood of success on appeal." *Id.* Where defense counsel has presented some arguments and issues, but not others, "it is difficult to demonstrate that counsel was incompetent." *Id.* (citation omitted).

For purposes of the second prong, a petitioner must demonstrate prejudice by some "reasonable probability." *Gallo-Vasquez*, 402 F.3d at 798. A reasonable probability is a "probability [of prejudice] sufficient to undermine confidence in the outcome" of the case. *Id.* This standard does not require the petitioner to convince the court that his attorney's ineffectiveness more likely than not altered the outcome in the case. *Id.* at 693. There is a presumption of reliability for the result of the proceeding on appeal, and a habeas petitioner claiming ineffective assistance of appellate counsel must prove the presumption incorrect in each particular case. *Smith v. Robbins*, 528 U.S. 259, 286 (2000).

Furthermore, where a state court has rejected a *Strickland* claim on the merits—as the Circuit Court of Cook County, at a minimum, did in finding the two *Strickland* claims at issue in this case to be frivolous and patently without merit (*see* D.E. 11, Ex. D at 2; *id.*, Ex. F at 1)—the Seventh Circuit has repeatedly instructed that, in determining reasonableness for AEDPA purposes, a district court must afford great deference to the state courts' application of the *Strickland* standard. *See Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003). In this regard,

the Seventh Circuit has repeatedly taught that, "*only a clear error* in applying *Strickland* would support a writ of habeas corpus,'" *id.* (quoting *Dixon v. Snyder*, 266 F.3d 693, 700-01 (7th Cir. 2001) (emphasis in *Murrell*), such that the assessment of the state courts' regarding *Strickland* was not even "'minimally consistent with the facts and circumstances of the case.'" *Id.* at 1112 (quoting *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999)).

Petitioner's ineffective assistance of counsel claims fail because the underlying *ex post facto* and Confrontation Clause claims are meritless. At best, the ineffective assistance of counsel might excuse procedural default so as to allow merits consideration of the underlying claims; however, the putative ineffectiveness provides no basis for habeas relief, given the meritless (and otherwise often waived) underlying claims.

## CONCLUSION

For the aforementioned reasons, federal habeas relief is not warranted. The Petition is respectfully denied.

So ordered

Mark Filip
United States District Judge
Northern District of Illinois

Date: _12-6-05_

24