

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHNNY WILLIAMS, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 04 C 5019 |
| ) | |
| v. ) | Judge Mark Filip |
| ) | |
| ALAN UCHTMAN,[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION DENYING CERTIFICATE OF APPEALABILITY

Johnny Williams ("Williams") is currently in the custody of warden Alan Uchtman at the Menard Correctional Center in Menard, Illinois.[2] (D.E. 15 at 4.) Williams was sentenced to 65 years imprisonment following his convictions for murder and two counts of attempted murder. (D.E. 11, Ex. A at 1.) On December 6, 2005, this Court denied Johnny Williams's ("Williams") Petition for a Writ of Habeas Corpus. (D.E. 13.) Williams then applied for a Certificate of Appealability on January 6, 2006. (D.E. 15.) For the reasons explained below, Williams's request for a Certificate of Appealability is respectfully denied.

### BACKGROUND

On June 16, 1996, William Dennis ("Dennis") drove with two men, Jerry Johnson ("Johnson") and Darren Brown ("Brown"), to an apartment complex to pick up Brown's cousin,

---

[1] Warden Charles Hinsley was the respondent when Williams filed his habeas petition in August 2004. Hinsley has been replaced as respondent by Alan Uchtman, the new warden.

[2] The facts are taken from the Illinois appellate court's resolution of Petitioner's direct appeal. *See, e.g., Ashford v. Gilmore*, 167 F.3d 1130, 1131 (7th Cir. 1999) (citing 28 U.S.C. § 2254(e)(1)). Docket entries are designated as "D.E. ___," followed by the appropriate district court docket number.

Kimberly Skipwith, to celebrate her birthday. (D.E. 11, Ex. A at 3.) Dennis was a member of the "Gangster Disciples" street gang at the time. (*Id.* at 5.) Unbeknownst to Dennis, Williams, a high-ranking member of the rival "Black Disciples" street gang, was at the apartment complex. (*Id.*)

When Dennis, Johnson, and Brown arrived at the apartment complex, four or five men, including Williams, John Little ("Little"), and Atravius Thomas ("Thomas"), approached them and asked the men "what y'all is"—*i.e.*, what was the gang membership of Dennis, Johnson, and Brown. (*Id.* at 3, 5.) Brown responded that they were Gangster Disciples. (*Id.* at 3.) Violence quickly ensued: Brown was struck in the face with a gun and Williams, Little, and Thomas all fired shots. (*Id.*) Dennis was fatally wounded and Brown and Johnson were shot in the arm and leg, respectively. (*Id.* at 3-4.)

Williams, Thomas, and Little were all charged in connection with the shootings. (*Id.* at 1.) Williams opted for a bench trial, Thomas chose a jury trial, and Little entered into a plea agreement in exchange for a 28-year prison term. (*Id.*) On September 5, 1997, as part of the plea-bargaining process, Little provided Assistant State's Attorney Michael O'Malley ("ASA O'Malley") with a written statement concerning the shootings (also "Little's Written Statement"). (*Id.* at 5.) Detective Smith of the Chicago Police Department ("Detective Smith") was also present during the preparation of Little's Written Statement. (*Id.* at 8.) In his written statement, Little related that there was an ongoing gang war between the Black Disciples and the Gangster Disciples at the time of the shootings. (*Id.* at 5.) In it, Little also indicated that Williams approached the car and shot at Dennis after Brown responded that he was a Gangster

2

Disciple, that Little shot twice at Brown and Johnson as they attempted to flee, and that Thomas fired in Dennis's direction three times. (*Id.*) Little signed each page of the statement. (*Id.* at 6.)

Williams and Thomas were tried concurrently in severed proceedings. (*Id.* at 1.) Before trial, the State indicated that it might call Little as a witness (*id.* at 2); Little's attorney maintained that Little would assert his Fifth Amendment right against self-incrimination. (*Id.*) The court determined that Little's decision not to testify was not protected by the Fifth Amendment because he had already pleaded guilty and been sentenced. (*Id.*) The trial court then held an evidentiary hearing to ascertain whether Little's Written Statement was admissible under 725 ILCS 5/115-10.2 ("Illinois Section 10.2"). (*Id.*) The trial court expressed its opinion that Little's Written Statement was admissible, but reserved ruling until trial. (*Id.* at 3.)

A witness named Gary Dixon ("Dixon") testified to an Illinois grand jury that he witnessed the crime and saw Williams "[shoot] the 'old man' three times." (*Id.* at 4.) At trial, Dixon essentially recanted his grand jury testimony. (*Id.*)

At trial, the State also called Little to testify. (*Id.*) On direct examination, Little admitted to pleading guilty to the murder of Dennis, but initially refused to answer the State's questions regarding his written statement. (*Id.*) Little argued that his refusal was protected by the Fifth Amendment because answering the State's questions would hurt his "appeal and his post-conviction rights." (*Id.*) The trial court disagreed with Little's position on the circumstances presented, and ordered Little to answer the State's questions. (*Id.*) Little then admitted that he had signed all but the first page of his statement, but claimed that he could not remember giving ASA O'Malley the information contained in his written statement. (*Id.*)

In connection with Little's testimony, the trial court determined that Little's trial testimony was inconsistent with his prior written statement. (*Id.* at 5.) Thus, the trial court held, Little's Written Statement was admissible under 725 ILCS 5/115-10.1 ("Illinois Section 10.1"), which, under certain circumstances, "allows a prior inconsistent statement that would otherwise be excluded as hearsay to be admitted as substantive evidence." *People v. Thomas*, 821 N.E.2d 628, 631 (Ill. App. Ct. 2004). The trial court did not admit the statement under Illinois Section 10.2, irrespective of whether it was admissible on that basis as well. (*Id.* at 5.) The trial court also permitted ASA O'Malley and Detective Smith to testify to the circumstances surrounding the preparation of Little's Written Statement and the statement itself. (*Id.* at 7-8.)

On cross-examination, Little answered every question co-defendant Thomas's attorney asked (*id.*); Williams's counsel adopted Thomas's cross-examination and declined the opportunity to cross-examine Little further. (*Id.* at 5.) Williams's counsel also cross-examined ASA O'Malley and Detective Smith. (*Id.*)

After deliberation, the trial court/factfinder found Williams guilty on all counts. The trial court sentenced Williams to consecutive prison terms of 45 years for the first-degree murder conviction and 10 years for each count of attempted first-degree murder, for a total sentence of 65 years. (*Id.* at 1.)

On direct appeal, Williams raised two claims: (1) the trial court erred in preventing Little from exercising his Fifth Amendment right to be free from self-incrimination and (2) the trial court violated Williams's Sixth Amendment right to be confronted with the witnesses against him ("Confrontation Clause") when it admitted Little's Written Statement under Illinois Section

10.2.[3] (*Id.* at 6.) The appellate court affirmed Williams's conviction. With respect to his first claim, the appellate court held that Williams lacked standing to assert Little's Fifth Amendment rights. (*Id.*) With respect to his second claim, the appellate court determined that Little's written statement was admitted under Illinois Section 10.1 and not Illinois Section 10.2; the appellate court further held that there was no Confrontation Clause violation because Williams had a fulsome opportunity to cross-examine Little himself, as well as ASA O'Malley and Detective Smith, at trial. (*Id.* at 6-8.)

Williams then filed a *pro se* petition for leave to appeal in the Illinois Supreme Court, advancing two claims that were substantially similar, at least in part, to the two raised on direct appeal. (*See, e.g., id.*, Ex. B at 2 ("The Appellate Court erred where the defendant was denied his Sixth Amendment right of confrontation when the Court incorrectly granted the State's 115-10.2 motion."); *id.* Ex. B at 15-16 (same).) The Illinois Supreme Court denied the petition. (*Id.*, Ex. C.)

On May 15, 2002, Williams filed a *pro se* post-conviction petition that advanced the following claims: (1) the trial court's admission of Little's written statement violated the *ex post facto* clauses of the Illinois and United States Constitutions; (2) Williams's Confrontation Clause rights were violated through the admission of Dixon's grand jury testimony when he testified inconsistently at trial; (3) Williams's trial counsel was ineffective for failing to preserve his *ex post facto* and Confrontation Clause claims; and (4) appellate counsel was ineffective for failing to raise the aforementioned claims on direct appeal. (*Id.*, Ex. D at 3.)

---

[3] Williams argued that the statement was admitted pursuant to Illinois Section 10.2; as is discussed below, the statement was actually admitted under Illinois Section 10.1.

The trial court summarily denied the petition as frivolous and meritless (*id.*, Ex. E) and the appellate court affirmed the denial, noting that the record showed that Little's Written Statement was admitted under Illinois Section 10.1 (not Illinois Section 10.2, as Williams contended) and that Williams had ample opportunity to cross-examine Little at trial. (*Id.*, Ex. F at 2.) The appellate court did not expressly address the other arguments in the petition. (*See id.*)

Williams subsequently filed a petition for leave to appeal to the Illinois Supreme Court that argued that the trial court erred as a matter of Illinois procedural law in summarily dismissing his petition for post-conviction relief on the merits without proceeding through more elaborate procedures otherwise called for under Illinois law. (*Id.*, Ex. G at 3.) Williams's petition only identified one further substantive claim—that the trial court's admission of Little's written statement violated the prohibition on *ex post facto* laws in the United States and Illinois Constitutions because Illinois Section 10.2 had not been enacted at the time Williams committed the murders and attempted murders. (*Id.*, Ex. G at 3.) The Supreme Court of Illinois denied the petition on January 28, 2004. (*Id.*, Ex. H.)

On August 2, 2004, Williams filed a petition for a writ of habeas corpus in the District Court for the Northern District of Illinois (D.E. 1), which was denied by the Court on December 6, 2005. (D.E. 13.) Williams then filed an application for a COA on January 6, 2006. (D.E. 15.)

I.  Standard of Review

The procedures for appealing the denial of a habeas petition are governed by Fed. R. App. P. 22(b) and 28 U.S.C. § 2253. Rule 22(b) provides that:

> "In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a

6

certificate of appealability under 28 U.S.C. § 2253(c). If an applicant files a notice of appeal, the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue."

Section 2253 of Title 28 authorizes a district or circuit judge to issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." When a district court has denied a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court has denied a petitioner's claims on procedural grounds "without reaching the prisoner's underlying constitutional claim," a COA should issue if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the district court was correct in its procedural ruling. *Id.* at 478. While a petitioner seeking a COA need not demonstrate that he will prevail in order to receive a COA, he or she "must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (internal quotation marks and citation omitted). In assessing the factual basis for a claim, the Court presumes that "[f]actual determinations of a state court are . . . correct and hence not 'unreasonable,' unless a petitioner can show otherwise by clear and convincing evidence." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (collecting cases).

II.   Issues Raised in the Application

Williams's application largely reiterates the claims raised in his habeas petition, without identifying any errors in the Court's reasoning or identifying any issues upon which reasonable jurists could disagree. Nonetheless, the Court will revisit Williams's claims to evaluate whether

he has satisfied the applicable standards for issuance of a COA concerning this Court's denial of his habeas petition.

Williams's first claim was that the admission of Little's Written Statement violated the constitutional prohibition against *ex post facto* laws. (D.E. 1 at 5.) The Court determined that this claim was without colorable merit because the record conclusively established that Little's Written Statement was admitted under Illinois Section 10.1 and that Illinois Section 10.1 had an effective date that preceded Williams's offenses. (D.E. 13 at 12-13.) Thus, given the clarity of the record on the basis for the statement's admission, Williams has not shown grounds for issuance of the COA. The facts only permit one conclusion in this instance and are not subject to reasonable debate.

Williams's second claim was that the admission of Dixon's and Little's out-of-court statements deprived him of his Sixth Amendment right to confront the witnesses against him. (D.E. 1 at 15.) Both of these claims were rejected because Dixon and Little both testified at trial and Williams's attorney had the opportunity to fully cross-examine both witnesses. (*See* D.E. 13 at 17, 20.) Supreme Court precedent establishes that the Confrontation Clause does not prohibit the admission of out-of-court statements when the declarant testifies at trial and is subject to cross-examination. *See, e.g., California v. Green*, 399 U.S. 149, 164 (1970) ("[T]he Confrontation Clause does not require excluding from evidence the prior statements of a witness. . . . who may be asked to. . . . explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories."); *see also Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant

appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

With respect to Dixon, he testified first at a grand jury that he witnessed Williams shoot the victim. (D.E. 11, Ex. A at 4.) The State sought to introduce this testimony as substantive evidence following Dixon's decision to recant at trial. (*Id.*) Dixon not only testified at trial, he was fully cross-examined by defense counsel. (*Id.*)

Williams also maintains that the admission of Little's Written Statement was barred by the Sixth Amendment. (D.E. 11 at 5, 8.) At trial, Little claimed he could not remember making the statement, therefore, the trial court deemed his prior statement inconsistent with his trial testimony. (*Id.* at 5.) The court admitted the statement under Illinois Section 10.1, which allows admission of an inconsistent statement which "narrates, describes, or explains an event or condition of which the witness had personal knowledge, and. . . the statement is proved to have been written or signed by the witness," as long as the witness testifies at trial.[4] Little was cross examined by counsel for co-defendant Thomas and Williams's attorney adopted the cross-examination when given the opportunity to cross-examine the witness himself. (D.E. 11 at 5.)

Williams argues that, under *Crawford*, Little's statement should not have been admitted. As the Court pointed out in the denial of the habeas petition, precedent teaches that *Crawford* cannot be applied retroactively. *See Murillo v. Frank*, 402 F.3d 786, 791 (7th Cir. 2005) ("*Crawford* cannot have established the sort of indispensable doctrine that applies retroactively[.]"); *see also id.* at 790 ("*Crawford* . . . is not retroactive on collateral attack.") (citation omitted); *Bintz v. Betrand*, 403 F.3d 859, 867 (7th Cir. 2005) (*Crawford*. . . . does not

---

[4] Little signed each page of the statement. (D.E. 11, Ex. B at 6.)

apply retroactively.") (citations omitted). Moreover, even assuming *Crawford* applied retroactively, it is of no help to Williams because Little testified at trial and was available for cross-examination concerning the prior statement. (D.E. 11 at 7–8.)

Finally, Williams claimed two instances of ineffective assistance of counsel: first, that trial counsel did not preserve his *ex post facto* and confrontation claims in a post-trial motion; and second, that his appellate counsel similarly did not preserve the issues on appeal. As the Court explained previously, if the underlying claims are without merit, it necessarily follows that counsel was not ineffective for failing to raise such claims. *See, e.g., Howard v. Gramley*, 225 F.3d 784, 790-91 (7th Cir. 2000). Consequently, this is not a basis for issuance of a COA. Put differently, no reasonable jurist, at least in this Court's view, would debate the propriety of denial of habeas relief with respect to the ineffective assistance of counsel claims on the facts of this case.

In his COA application, Williams maintains that, because he "was found guilty by trial judge of the murder that Little plead guilty to, and one of the Attempted murders that Thomas was found guilty of," his conviction was "legally inconsistent." (D.E. 15 at 4.) Not only was this argument defaulted because it was never presented for a full round of state review, it also was waived when it was not presented in his habeas petition. Furthermore, this claim is baseless, as two persons are held responsible for the same "crime" as a matter of course under the Illinois Criminal Code. For example, 720 ILCS 5/5-2 holds persons accountable for the acts of others when they share a "common design" in committing the offense. Both Thomas and Little were participants with Williams in the shootings, and thus could be held liable as either a principal or as an accomplice for the harm that ensued. Similarly, the felony-murder rule holds a person

"accountable" for the death of another person during the joint commission of a forcible felony, even if someone else is convicted of the murder (for example, as the actual shooter). *See, e.g., People v. Hudson*, 821 N.E.2d 1203, 1207 (Ill. App. Ct. 2004) (discussing accountability principles for murder committed by a confederate during commission of forcible felony); *People v. McGee*, 801 N.E. 2d 948, 951 (Ill. App. Ct. 2003) (two gang members convicted of murdering the same person even though only one of them shot the victim). Given that Williams's contention with respect to inconsistent verdicts is without foundation, it also provides no basis for the issuance of a COA.

The standard for issuance of a COA certainly does not require a habeas applicant to show that he is more likely to win than lose on appeal. *See, e.g., Miller-El*, 537 U.S. at 338. Nonetheless, the COA process is designed to impose a "threshold" or "gateway" test to sort (at least potential) wheat from (clear) chaff for purposes of appeal. *Id.* at 337; *see also id.* ("By enacting AEDPA . . . Congress confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not. It follows that issuance of a COA must not be *pro forma* or a matter of course."). In this regard, the Supreme Court has taught the mere existence of good faith on the part of the habeas petitioner is not enough, (*id.* at 338), nor is the mere "absence of frivolity" in the petitioner's position. *Id.* In sum, this case is not, at least in this Court's view, one in which reasonable jurists would find debatable the rejection of Mr. Williams's habeas claims. *See id.* Accordingly, denial of the request for a COA is appropriate.

11

## CONCLUSION

For the aforementioned reasons, Williams has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. He also has failed to meet the applicable standards for issuance of a COA. Accordingly, the application for a Certificate of Appealability is respectfully denied.

*Mark Filip*
Mark Filip
United States District Judge
Northern District of Illinois

Date: 4/5/06